| | | |
|---|---|---|
| **PEDRO GARCIA ARRIAGA and all others** | § | |
| **similarly situated under U.S.C. 216(b),** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **3:12-cv-00094-D-BK** |
| | § | |
| **JESS ENTERPRISES, LLC,** | § | |
| **SEJ PROPERTIES, L.P.,** | § | |
| **CALIFCO, LLC and ELIAS SHOKRIAN** | § | |
| **also known as** | | |
| **ELIAS SHAKRIAN,** | | |
| | | |
| **Defendants.** | | |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO MOTION FOR
RELIEF FROM JUDGMENT PURSUANT TO RULE 60(B) AND REQUEST FOR
EXPEDITED INDICATIVE RULING**

Defendants request that the Court Grant their Motion for Relief from Judgment

Pursuant to Rule 60(b) and Request for Expedited Indicative Ruling, and in support

shows as follows:

## I.  INTRODUCTION

Defendants ask the Court to do nothing more than call "a spade a spade." No

construction of the concrete facts present in this case suggest that the process leading up

to the judgment involved anything other than "extraordinary circumstances" and "due

process violations." If the Court follows the guiding precedent of the Fifth Circuit, it will

provide indication that it would relieve Defendants from Judgment upon remand. If the

Court instead decides to take Plaintiff's factual misrepresentations as gospel and

misapplication of authority as "law," the Court will deny Defendants' Motion. Plaintiff

simply asks the Court to call a "spade a spade" and provide indication of proper relief.

## II. DEFENDANTS' RESPONSE MISREPRESENTS KEY FACTS

Plaintiff misrepresents key facts by using vague representations throughout his Response to deceive the Court into believing that the judgment in this case resulted from something other than "extraordinary circumstances," mistake, surprise, or due process violations.

Plaintiff repeatedly makes the following types of misrepresentations and half-truths throughout his motion to support his untenable position:

> **Plaintiff's Representation:** "Shokrian was aware that his absence was excused only on the condition that the trial could go forward as scheduled because he would have legal counsel there to represent both himself and Corporate Defendants."[1]

> **Truth:** Shokrian (1) relied on the court's excusal from the first day of trial; (2) believed the court would grant continuance due to his counsel's poor representation; and (3) if the court denied continuance, his attorney would continue to represent him and Corporate Defendants.[2]

> **Plaintiff's Representation:** "Defendants note that the District Court had excused Shokrian from the first day of trial, but do not [mention] the parameters of that excusal."[3]

> **Truth:** The Court revoked the unconditional permission and provided justification for the revocation on the day of trial without notice to Shokrian. The Court never attached strings to the dismissal prior to trial.[4]

> **Plaintiff's Representation:** Plaintiff makes continuous misrepresentations that the Corporate Representative **and** Defense Counsel who attended trial informed Shokrian of the consequences of his non-attendance and withdrawal of counsel.[5]

> **Truth:** Shokrian never talked to Defense Counsel about the consequences of non-attendance.[6] Because the Court decided the following issues after Shokrian's conversation with the Corporate Representative, he could not

---

[1] Id. at 17; See also Id. at 12 (similar misrepresentations).
[2] Doc. 97, Exhibit B at par. 5.
[3] Doc. 99, p. 12.
[4] Doc. 57, p. 21.
[5] Id. at p. 15 (citing to Doc. 57, 3-12); See also Id. at p.
[6] Doc. 97, Ex. B.

have possibly known that (1) the court would conduct a de facto damages hearing against Corporate Defendants; (2) the court waived Shokrian's right to a jury trial based on his non-attendance; or (3) the court would proceed with an uncontested bench trial against Defendants.[7]

**Plaintiff's Representation:** "Defendants arbitrarily terminated their own counsel to leave them without counsel the day before trial."[8]

**Truth:** Shokrian attests that he did not fire his counsel who he is currently suing for malpractice based, in part, on his decision to unilaterally terminate his representation in this case.[9][10][11]

## III. ARGUMENT

### A. CALL A SPADE A SPADE: THE COMBINED CIRCUMSTANCES RENDERS THE JUDGMENT VOID AS A MATTER OF LAW

The "combined circumstances" test controls void judgment determination in the Fifth Circuit. The combined circumstances test emanates from *Bass v. Hoagland*, where the Fifth Circuit determined a *sua sponte* default judgment to be void on three key grounds: (1) the court could not have entered default following the defendant's answer of the Plaintiff's Complaint under Rule 55;[12] (2) the court entered default judgment without proper Rule 55(b)(2) notice;[13] and (3) the court violated the defendant's right to a demanded jury trial.[14] All of these key due process violations exist in this case.

---

[7] *See* Doc. 57, p. 22.

[8] *See* Doc. 99, p. 16

[9] *See* Doc. 97, Ex. B.

[10] Id. at p. 15 (citing to Doc. 57, 3-12).

[11] Further, even assuming, *arguendo*, that the Court believes Mr. Carse's testimony in court, Shokrian did not make an arbitrary decision because (1) he needed to obtain new counsel due to Mr. Carse's poor representation; and (2) he believed that the court would require Mr. Carse to represent the Defendants in the case. *See* Doc. 97, Ex. B.

[12] *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 400 n. 2 (5th Cir. 1981) quoting *Bass v. Hoagland*, 172 F.2d 205, 209-10 (5th Cir. 1949) ("[Rule 55] does not require that to escape default the defendant must not only file a sufficient answer to the merits, but must also have a lawyer or be present in court when the case is called for a trial.... When Bass by his attorney filed a denial of the plaintiff's case neither the clerk nor the judge could enter a default against him.").

[13] *Bass*, 172 F.2d 205 at 208 (5th Cir. 1949).

[14] Id. at 210 ("The judgment states the plaintiff was not present at the trial, but only his counsel; and that no defendant was present in person or by counsel, so there could have been no waiver of any right.")

**1.    The First Circumstance Rendering the Judgment Void: The Court Denied a Jury Trial Despite Defendants' Non-Waiver**

The *Bass* decision concluded that the lower court violated the defendant's jury trial right, rendering the judgment void, where the plaintiff (1) demanded a jury trial and (2) waived his jury trial, but (3) defendant had not consented to withdrawal of the demand.[15] While Plaintiff contends that Defendants could not rely on Plaintiff's jury trial demand, Defendants—like the Bass defendant—had their seventh amendment rights deprived when the court denied their right to a jury trial without their consent.

While the Plaintiff contends that the Fifth Circuit has decided that "[u]nder certain circumstances, failure to appear at trial may constitute waiver of a jury trial right,"[16] the statement contradicts binding law. The case cited by Plaintiff—irrelevant to the issue it intends Plaintiff intends for it to support—relied on a secondary source, which in turn relied on *Alaska* case law for the proposition that non-appearance provided grounds for default judgment.[17] The secondary source, however, noted the disagreement between the Fifth Circuit and Alaska by quoting to this dispositive (to this issue) line from seminal *Bass* decision:

> It was held in *Bass* [] that failure to try the issue of damages to the jury even thought the party has failed to appear for trial ***is an error so fundamental*** that the judgment is subject to collateral attack.[18]

Dead on the law, Plaintiff makes a poor comparison between Defendants and an attorney defendant in a Fifth Circuit case where the Court held that the attorney defendant waived

---

[15] *Bass*, 172 F.2d 205 at 207 (5th Cir. 1949)( "rendered [judgment] without a trial by jury after a jury had been duly demanded by plaintiff and defendant had not consented to the withdrawal of that demand.")

[16] Doc. 99, p. 11 (citing to *Casperone v. Landmark Oil and Gas Corp.*, 819 F. 2d 112, 116 (5th Cir. 1987).

[17]

[18] *See* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2321 (1971 & Supp.1986).

his right to a jury trial where (1) he failed to attend his pretrial conference; (2) his co-defendant and co-counsel waived their jury trial rights; and (3) he actually ***attended*** the bench trial without objection.[19] We have inapposite facts here: (1) Defendants attended pretrial conference through their attorney; (2) no co-defendants consented jury demand withdrawal at any time; and (3) Defendants did not attend the proceeding.

The law of this circuit dictates that Defendants could not waive a jury trial absent affirmative consent or trial attendance (with lack of objection).[20] Because Defendants did not waive the jury trial right, the Court violated Defendants seventh amendment right by conducting a bench trial and entering default judgment. As a result, this factor weighs heavily in favor of a void judgment finding.

**2.      The Second and Third Circumstances Rendering the Judgment Void: The Judge's *Sua Sponte* Default Judgment Was Improper Under Rule 55**

Plaintiff concedes that if Rule 55 applies to the court's *sua sponte* default judgment by failing to contest Defendants' argument. To recap, the Court violated Corporate Defendants' due process rights based on the following two grounds:

1. **No Grounds for Default Existed and Defendant Did Not Fail to Defend:** Fifth Circuit precedent dictates that no grounds for default exist based on a Defendants' failure to appear at trial after answering a complaint under Rule 55.[21]

2. **The Court Provided No Notice:** Fifth Circuit precedent dictates that the *sua sponte* default judgment violated due process because the Plaintiff never received the notice required under Rule 55(b)(2) for default judgments.[22]

---

[19] *Casperone v. Landmark Oil and Gas Corp.*, 819 F. 2d 112, 116 (5th Cir. 1987).

[20] *Bass*, 172 F.2d at 209). (". . . no defendant was present in person or by counsel, so there could have been no waiver of any right.")

[21] *Bass v. Hoagland,* 172 F.2d 205, 209 (5th Cir. 1949) *cert. denied,* 338 U.S. 816, 70 S.Ct. 57, 94 L.Ed. 494 (1949).

[22] *Id.*

Both of these rules emanate from the seminal *Bass* case in which the Fifth Circuit decided that a *sua sponte* default judgment[23] entered by the lower court violated Rule 55 where the court based the decision on the non-appearance of defendant and his counsel.[24] While Plaintiff contends that Rule 55 does not provide the court with the power to enter *sua sponte* default judgment,[25] its opinion contradicts the basic facts and analysis of the *Bass* opinion as interpreted by multiple subsequent Fifth Circuit opinions.[2627] Plaintiff also ignores that the Fifth Circuit has explicitly provided that a party needs to prove his case through the scheduled trial on the merits in cases where a defendant fails to appear at trial.[28]

Plaintiff, instead of attacking Defendant's argument directly, invents the idea that Court entered the default judgment as a ***sanction*** against Corporate Defendants' for "failing to appear through counsel on the scheduled day of trial" and failing to comply with an amorphous "Court[] Order".[29] Plaintiff's argument has no basis in fact or law.

Plaintiff's argument has no basis in fact because the court never ***even contemplated a default sanction*** against Corporate Defendants or Shokrian for failure to appear throughout the trial. The Court, rather decided to default based on their failure to defend under Rule 55 under the following grounds: (1) they did not have counsel; and (2)

---

[23] *See e.g. Williams v. New Orleans Public Serv., Inc.,*728 F.2d 730, 735 (5th Cir.1984)(citing to Bass, 172 F.2d at 208-09). (. . . default was entered solely as a result of Bass' attorney's failure to appear for trial; and Bass was never provided with any notice of appeal (which apparently was entered sua sponte by the court) . . .").

[24] Bass, 172 F.2d at 208-09(applying Rule 55 to default judgment based on Defendant's and Defendant's Counsel to attend trial).

[25] Doc. 99, p. 9.

[26] Williams v. New Orleans Public Serv., Inc.,728 F.2d 730, 735;

[27] Plaintiff ignores that the Fifth Circuit has even provided admonishment that a court should proceed to conduct a trial and require a plaintiff to prove his case on the merits—not enter default judgment—where a defendant fails to appear at trial. Bass, 172 F. 2d at 210.

[28] Bass, 172 F. 2d at 210.

[29] Doc. 99, p. 10.

could not "represent themselves pro se."[30] While Plaintiff claims the court ordered a default sanction, the record makes only one reference to sanctions—possible monetary and/or admissions sanctions against Shokrian.[31] Secondly, Defendants could find no legal precedent in the Fifth Circuit that even examines the propriety of a Rule 16 default judgment sanction against a defendant based exclusively on failure to attend trial; Plaintiff no evidence that this has *ever* occurred in the past which makes sense: The purpose of Rule 16 pertains exclusively to pretrial activities.[32]

Because the Court (1) entered an improper default judgment; and (2) provided no notice of the default judgment under Rule 55, the judgment entered violated due process, rendering it void and necessitating immediate relief from judgment.

**3.      The Fehlaber Case Cited by Plaintiff Supports that this Case Has the Combined Circumstances of Due Process Violations that Existed in Bass**

Plaintiff contends that the facts of our case "bear[] a much greater resemblance to *Fehlaber* than *Bass*."[33] Plaintiff's contention ignores that the *Fehlaber* Court differentiated the facts of each case (*Bass* and *Fehlaber*) based on the absence of the three due process violations provided above:

> The alleged procedural errors in the instant case, although they are serious and "seem to present a case of injustice," do not approach the level of ***irregularity of Bass to constitute a due process violation****. . . .* In Bass the ***initial entry of default judgment was held invalid because it was entered on improper grounds.*** The Bass Court also found that even if entry of default was proper, entry of default judgment ***was not preceded by three days notice as required by federal rules****. . . .* Finally, in Bass the court ***gave considerable emphasis to the denial of the defendant's right of a jury trial.***[34]

---

[30] Doc. 57, p. 15.
[31] Doc. 55, p. 11-12.
[32] Fed. R. Civ. P. 16(a)(1-5).
[33] Doc. 99, p. 16.
[34] *Fehlaber v. Fehlaber*, 681 F.2d 1015, 1027 (5th Cir. 1949)(emphasis added).

Defendants agree with Plaintiff that reasoning in *Fehlaber* controls the instant case: All of the key procedural due process concerns justifying relief in Bass—non-existent in *Fehlaber*—exist in this case, justifying relief from the patently void judgment.

**B.      The Court Should Liberally Apply 60(b) to the Judgments Entered in this Case and Grant Relief Based on the Comedy of Errors or the Extraordinary Circumstances Leading to Judgment**

Regardless whether of the Court determines the judgment void, it should liberally apply Rule 60(b) to relieve Defendants[35] from the harsh judgment levied by the court due to (1) the mistakes, surprises, and excusable neglect caused by ***all actors*** in this case; or (2) the undeniable existence of extraordinary circumstances leading to judgment.

Plaintiff contends that the Defendants "played games with the court" and willfully defaulted to force the court to proceed with the uncontested bench trial in order to argue the court should not grant relief.[36] The facts (as opposed to the Plaintiff's misrepresented facts explained *supra*), however, expose the truth.

First, Plaintiff had no reason to "play games with the court" after over a year of litigating this case. Plaintiff's also never acted in any manner that even arguably violated a Court Order or directive prior to the day of trial. Defendants, who showed this pattern of compliance over the course of over a year of litigation, instead were deprived of their day in court due to the following mistakes and surprises under rule 60(b)(1), which also constitute extraordinary circumstances under 60(b)(6): (1) Defendants' belief that they had not terminated counsel;[37] (2) counsel's unilateral withdrawal on the day of trial;[38] (3)

---

[35] Defendant's Motion (Doc. 97, p. 15) provides explanation as to why the court applies the liberal analysis to both the traditional default judgment against Defendants and the truncated proceedings against Shokrian.
[36] *See* Doc. 99, p. 16.
[37] Doc 97, Ex. B.
[38] Id.

Shokrian's belief that the Court had excused him from trial;[39] (4) the Court's *sua sponte* revocation of Shokrian's excused absence;[40] (5) Shokrian's lack of knowledge regarding the recocation; (6) the Court's decision to try an uncontested, truncated bench trial in the absence of Shokrian or his attorney at the suggestion of Plaintiff's Counsel without regard to precedent;[41] (7) Shokrian's mistaken belief that the Court would grant a continuance based on his attorney's poor performance;[42] (8) Counsel's failure to communicate with Shokrian on the day of trial or tell Shokrian about the consequences of his unilateral withdrawal and/or continuance denial;[43] (9) the Court not requiring Counsel to advise Shokrian that he had a choice to retain counsel to avoid default judgment and/or the uncontested bench trial;[44] (10) the court's improper *sua sponte* default judgment that lacked proper notice;[45] (11) the court's decision to not ensure that Shokrian had notice of the ramifications of his actions by allowing a Spanish speaking maintenance worker with a 10th grade education left to relate complicated legal proceedings;[46] (12) Shokrian's predictable lack of knowledge regarding the need to show up at court, the withdrawal of counsel, or the uncontested bench trial conducted based on that communication;[47] and (13) the court's mistaken belief that Shokrian had waived his jury trial right under 5th Circuit Law, despite doubts regarding the same.[48]

---

[39] Id.
[40] Doc. 57, p. 21.
[41] See Doc. 57, p. 16.
[42] Doc. 97, Ex. B.
[43] Doc. 57, p. 7.
[44] See generally Doc. 57.
[45] Doc. 57, p. 7.
[46] See generally Doc. 57, p.12 (court allowing Spanish speaking maintenance supervisor with 10th grade education to inform Shokrian about nuanced legal proceedings who informed the court he had told Shokrian about the "what the attorney had explained to me as far as – as far as punishment – what is the word?.")
[47] Doc. 57, p. 12.
[48] Doc. 57, p. 16-17.

Even assuming that the Court chooses to believe the testimony of Shokrian's ex-counsel regarding his alleged termination on the night before trial,[49] relief from judgment is still justified because the all of the actors made major mistakes in this case which led to default judgment and truncated proceedings. Shokrian did not "play games with the court," but acted on the information known to him at the time of the proceeding. This comedy of errors (not so comic when it costs you $100,000 and untold attorneys' fees) caused the entry of default judgment and the truncated, bench trial that hung Defendants out to dry. All of the parties—the Court, the parties' attorneys, the maintenance worker and Shokrian—all made crucial mistakes that the Court has left Defendants to pay for through the $100,000 judgment imposition. Such imposition constitutes manifest injustice, especially because (1) Defendants are only in court due to the fraud perpetrated by Plaintiff; (2) the Plaintiff's fraudulent time clock entries serve as the sole basis of his suit; and (3) Plaintiff's admitted fraud provides them with a highly meritorious defense.[50]

If the Court sticks to the rulebook and liberally applies Rule 60(b) to tap "its grand reservoir of equitable relief to do justice," no doubt exists that the court will indicate its intention to relieve Defendants from judgment.

## IV. Conclusion

Plaintiff fails to raise one competent argument for the Court to deny Defendants' Motion. If the Court applies the law and decides to call "a spade a spade," the court will swiftly indicate its intention to enter relief from judgment upon potential remand.

---

[49] Defense Counsel had a dispute with Shokrian the night before the scheduled trial and is currently involved in malpractice lawsuit regarding his actions in this case.
[50] See e.g. Doc. 97, Ex. C, 28-32.

Dated: June 12, 2014                         Respectfully Submitted,


## The SIEGEL Law Group


By: /s/ Jack L. Siegel
Jack Siegel
Texas Bar No. 24070621
Jack@Siegellawgroup.biz
10440 N. Central Expy.
Suite 1040
Dallas, TX 75231
Tel. 469.249.2889
Fac. 469.339.0204
www.siegellawgroup.biz

**ATTORNEYS FOR DEFENDANTS**


### CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2014, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "notice of Electronic filing" to the attorneys of Record who have consented to accept this Notice as service of this document by electronic means.

/s/ Jack Siegel
Jack Siegel